Brendan Cummings (CA Bar No. 193952)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252
Phone: (760) 366-2232
Facsimile: (760) 366-2669
Email: bcummings@biologicaldiversity.org

David R. Hobstetter (CA Bar No. 277344)
CENTER FOR BIOLOGICAL DIVERSITY
351 California Street, Suite 600
San Francisco, CA 94104
Phone: (415) 436-9682 x321
Facsimile: (415) 436-9683
Email: dhobstetter@biologicaldiversity.org

Nathan Matthews (CA Bar No. 264248)
SIERRA CLUB
85 2nd St., Second Floor
San Francisco, CA 94105
Phone: (415) 977-5695
Facsimile: (415) 977-5793
Email: Nathan.Matthews@sierraclub.org

Attorneys for Plaintiffs
CENTER FOR BIOLOGICAL DIVERSITY
and SIERRA CLUB

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and SIERRA CLUB,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE BUREAU OF LAND MANAGEMENT and SALLY JEWELL, Secretary of the Department of the Interior,<br><br>    Defendants. | Case No. CV-11-06174-PSG<br><br>**Plaintiffs' Opening Brief Re Remedy**<br><br>Hearing Date: August 6, 2013<br>Time: 10:00 AM<br><br>The Honorable Paul S. Grewal |

**TABLE OF CONTENTS**

I.      INTRODUCTION   ............................................................................................... 1

II.     THE BLM DECISIONS AT ISSUE .................................................................. 2

III.    LEGAL STANDARDS FOR VACATUR AND INJUNCTIONS ........................................ 2

        A.    Vacatur is the Presumed Remedy for Unlawful Agency Action.................................. 2

        B.    Remand Without Vacatur is Warranted Only in Limited Circumstances ................ 4

        C.    The Supreme Court in *Monsanto* Clarified that Vacatur is Preferred over an
Injunction           ............................................................................................................ 5

IV.     THE COURT MUST VACATE THE EA, FONSI, AND ILLEGALLY-ISSUED LEASES . 6

        A.    The Presumptive Remedy of Vacatur is Appropriate .................................... 6

        B.    Vacatur Ensures the Agency Will Take a Fresh Look and Not Simply Defend a Pre-
Ordained Conclusion       ............................................................................................. 9

V.      ABSENT VACATUR, AN INJUNCTION IS WARRANTED ............................................. 10

        A.    Plaintiffs Have Suffered an Irreparable Injury. ........................................... 11

        B.    The Remedies Available at Law are Inadequate. ......................................... 12

        C.    The Balance of Hardships Favors an Injunction. ......................................... 13

        D.    The Public Interest Will Not Be Disserved by an Injunction........................... 13

VI.     CONCLUSION       ........................................................................................ 14

**TABLE OF AUTHORITIES**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,

   632 F.3d 1127 (9th Cir. 2011) ................................................................................ 12, 14

*Am. Bioscience, Inc. v. Thompson*,

   269 F.3d 1077 (D.C. Cir. 2001) .................................................................................... 4

*Amoco Prod. Co. v. Vill. of Gambell*,

   480 U.S. 531 (1987) ........................................................................................ 11, 12, 13

*Bunyard v. Hodel*,

   702 F. Supp. 820 (D. Nev. 1988) .................................................................................. 4

*California Communities Against Toxics v. U.S. EPA*,

   688 F.3d 989 (9th Cir. 2012). ................................................................................... 5-8

*Checkosky v. SEC*,

   23 F.3d 45 (D.C. Cir. 1994) ........................................................................................ 3

*FCC v. NextWave Pers. Communs. Inc.*,

   537 U.S. 293 (2003) ............................................................................................ 1,3,8

*Fed. Election Comm'n v. Akins*,

   524 U.S. 1 (1998) ........................................................................................................ 3

*Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*,

   423 U.S. 326 (1976) .................................................................................................... 3

*Food Mktg. Inst. v. ICC*,

   587 F.2d 1285 (D.C. Cir. 1978) .................................................................................. 9

*High Sierra Hikers v. Blackwell*,

   390 F.3d 630 (9th Cir. 2004) ....................................................................................... 6

*Humane Soc'y of the United States v. Locke*,

   626 F.3d 1040 (9th Cir. 2010) ..................................................................................... 4

*Humane Soc'y of U.S. v. Johanns*,

   520 F. Supp. 2d 8 (D.D.C. 2007) ................................................................................ 4

*Idaho Farm Bureau Fed'n v. Babbitt,*

   58 F.3d 1392 (9th Cir. 1995) ................................................................................. 4

*Idaho Sporting Cong. Inc. v. Alexander,*

   222 F.3d 562 (9th Cir. 2002) ............................................................................. 1, 3

*Idaho Sporting Congress, Inc. v. Rittenhouse,*

   305 F.3d 957 (9th Cir. 2002) ................................................................................. 6

*In re Polar Bear Endangered Species Act Listing 4(d) Rule Litig.,*

   818 F. Supp. 2d 214 (D.D.C. 2011) ................................................................... 4, 6

*Independence Mining Co. v. Babbitt,*

   105 F.3d 50 (9th Cir. 1997) ................................................................................. 10

*Lands Council v. McNair,*

   537 F.3d 981 (9th Cir. 2008) ............................................................................... 13

*Lands Council v. Powell,*

   395 F.3d 1019 (9th Cir. 2005) ............................................................................... 5

*Metcalfe v Daley,*

   214 F.3d 1135 (9th Cir. 2000) ........................................................................ 9, 10

*Monsanto v. Geertson Seed Farms,*

   130 S. Ct. 2743 (2010) .................................................................................... 5, 10

*N.W. Coalition for Alt. to Pesticides v. U.S. EPA,*

   544 F.3d 1043 (9th Cir. 2008) ............................................................................... 3

*N.W. Envtl. Def. Ctr. v. Bonneville Pwr. Admin.,*

   477 F.3d 668 (9th Cir. 2007) ............................................................................. 1, 3

*Natural Res. Def. Council v. Houston,*

   146 F.3d 1118 (9th Cir. 1998) ............................................................................... 3

*Neighbors of Cuddy Mountain v. USFS,*

   137 F.3d 1372 (9th Cir. 1998) ............................................................................... 6

*Pit River Tribe v. United States Forest Serv.,*

   615 F.3d 1069 (9th Cir. 2010) ........................................................................... 3, 4

*Pit River Tribe v. United States Forest Serv.*,

    469 F.3d 768 (9th Cir. 2006) ......................................................................... 3

*Reed v. Salazar*,

    744 F. Supp. 2d 98 (D.D.C. 2010) ........................................................... 4, 6

*Robertson v. Methow Valley Citizens Council*,

    490 U.S. 332 (1989) ....................................................................................... 7

*Save Strawberry Canyon v. DOE*,

    613 F. Supp. 2d 1177 (N.D. Cal. 2009) ...................................................... 12

*Sierra Club v. Bosworth*,

    510 F.3d 1016 (9th Cir. 2007) .............................................................. 12, 14

*Sierra Club v. Van Antwerp*,

    719 F. Supp. 2d 77 (D.D.C. 2010) ................................................................ 4

*United States v. Oakland Cannabis Buyers' Coop.*,

    532 U.S. 483 (2001) ..................................................................................... 10

*W. Oil & Gas Ass'n v. EPA*,

    633 F.2d 803 (9th Cir. 1980) ......................................................................... 5

*Winter v. NRDC*,

    555 U.S. 7 (2008) ......................................................................................... 11

**Statutes**

5 U.S.C. § 706 ....................................................................................... passim

 **Regulations**

43 C.F.R. § 3108.3(d) ................................................................................ 8, 13

43 C.F.R. § 3162.3-1 ..................................................................................... 13

**Other Authorities**

Black's Law Dictionary 1404

    (8th Ed. 2004) ................................................................................................ 2

# I.      INTRODUCTION

On March 31, 2013, this Court issued an opinion and order resolving the parties' cross-motions for summary judgment ("Order").  Dkt # 45.  The Court found that Defendants United States Bureau of Land Management and Sally Jewell, Secretary of the Interior[1] (collectively "BLM") violated the National Environmental Policy Act ("NEPA") when making decisions to hold a lease sale and subsequently issue leases in Monterey County.  The Court requested that the parties confer and submit an appropriate judgment regarding remedy.  The parties met and conferred but were unable to agree upon a remedy.  Plaintiffs Center for Biological Diversity and Sierra Club ("Plaintiffs") therefore respectfully request that the Court issue an order setting aside BLM's lease sale decision, the underlying NEPA documents, and the two unlawfully issued leases.

As explained in further detail below, the presumptive remedy in cases that are brought pursuant to the Administrative Procedure Act ("APA") is for a court to "set aside" or vacate the illegal agency action.  *See, e.g.*, *FCC v. NextWave Personal Communs. Inc.*, 537 U.S. 293, 300 (2003) ("The Administrative Procedure Act *requires* federal courts to set aside federal agency action that is 'not in accordance with law,' 5 U.S.C. § 706(2)(A)"); *N.W. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 681 (9th Cir. 2007) ("Under the APA, we *must* set aside BPA's action if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"); *Idaho Sporting Cong. Inc. v. Alexander*, 222 F.3d 562, 567 (9th Cir. 2002) ("agency action taken without observance of the procedure required by law *will be* set aside."); *see also* 5 U.S.C. § 706(2)(A) & (D) ("The reviewing court *shall* . . . hold unlawful and *set aside* agency action . . . found to be arbitrary, capricious, . . . or otherwise not in accordance with law" or "without observance of procedure required by law.") (emphases added).

Here, this Court has already found that BLM's lease sale decisions were arbitrary and capricious and not in accordance with the requirements of NEPA.  Order at 24-28.  The plain language of the APA, as well as the caselaw of the Supreme Court and this Circuit, dictate that the Court must

---

[1] Pursuant to F.R.C.P. 25(d) newly-appointed Secretary of the Interior Sally Jewell is substituted for her predecessor Ken Salazar.

now set aside BLM's unlawful actions.  Doing so will protect not just the sensitive lands subject to the lease sale but also the integrity of the lease sale process which allows such leasing only *after* the agency has fully considered all risks flowing from the leasing, including in this case, the significant risks from hydraulic fracturing, or fracking.

## II.   THE BLM DECISIONS AT ISSUE

On June 16, 2011, BLM issued a final environmental assessment ("EA") and Finding of No Significant Impact ("FONSI") for its decision to offer approximately 2,700 acres of land in Monterey and Fresno counties for oil leasing.  Plaintiffs filed a protest with BLM on July 15, 2011, arguing, *inter alia*, that the EA failed to take a hard look at environmental impacts of the leases, particularly with regard to fracking, and that the project's significant impacts required that BLM prepare an environmental impact statement ("EIS").  BLM dismissed Plaintiffs' protest and proceeded to sell the four parcels, with two in Monterey County totaling 2,463 acres and two in Fresno County totaling 240 acres.  On October 31, 2011, BLM issued the leases, with the Fresno leases containing no surface occupancy ("NSO") provisions.  Plaintiffs filed suit on December 8, 2011, and on March 31, 2013, the Court issued an Order holding that BLM violated NEPA with regard to the Monterey County leases. Plaintiffs now seek vacatur of the EA, FONSI, and the issuance of the two Monterey County leases.[2]

## III.   LEGAL STANDARDS FOR VACATUR AND INJUNCTIONS

### A.   Vacatur is the Presumed Remedy for Unlawful Agency Action.

Plaintiffs' challenge to the BLM lease sale decisions was brought – as are all NEPA cases – pursuant to the judicial review provisions of the Administrative Procedure Act ("APA").  5 U.S.C. § 706.  The APA uses mandatory language to instruct that, the "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id*. § 706(2)(A).  "Set aside" means to vacate. *See* BLACK'S LAW DICTIONARY 1404 (8th Ed. 2004) ("set aside" means "to annul or vacate"); *cf.*

---

[2] For the two Fresno leases comprising 240 acres, the Court found that because they contained NSO provisions prohibiting any surface-disturbing activities, their issuance did not trigger NEPA requirements.  Order at 17.  BLM has indicated it will conduct a full environmental review under NEPA, including an analysis of fracking, before allowing any activity on those leases.  *See* BLM Opening Summ. J. Brief at 16.

1  *Checkosky v. SEC*, 23 F.3d 452, 491 (D.C. Cir. 1994) (Randolph, J., concurring) ("Setting aside means

2  vacating; no other meaning is apparent.").

3        The Supreme Court has repeatedly stated that the statutory language in APA Section 706(2)(A)

4  requires that "*[i]n all cases* agency action *must be set aside* if the action was arbitrary, capricious, an

5  abuse of discretion or otherwise not in accordance with law.'"   *NextWave Personal Commc'ns*, 537

6  U.S. at 300 *quoting Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413-14 (1971); *see also*

7  *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 331 (1976) (explaining that "[i]f

8  the decision of the agency is not sustainable on the administrative record made, then the . . . decision

9  *must be vacated* and the matter remanded"); *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998)

10 ("If a reviewing court agrees that the agency misinterpreted the law, it *will set aside* the agency's action

11 and remand the case…") (emphases added).

12       The Ninth Circuit has repeated this statutory mandate.  *See, e.g.*, *N.W. Coalition for Alt. to*

13 *Pesticides v. U.S. EPA*, 544 F.3d 1043, 1047 (9th Cir. 2008) (a court "*must* set aside an agency's

14 decision if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

15 law'"); *N.W. Envtl. Def. Ctr.*, 477 F.3d at 681 ("Under the APA, we *must* set aside BPA's action if it

16 was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"); *Idaho*

17 *Sporting Cong.*, 222 F.3d at 567 ("agency action taken without observance of the procedure required by

18 law *will* be set aside."); *Natural Res. Def. Council v. Houston*, 146 F.3d 1118, 1129 (9th Cir. 1998)

19 (rescinding fourteen contracts for the delivery of water and ruling that "[w]here an agency acts

20 arbitrarily or capriciously or not in accordance with the law, the APA states that the court *shall* set

21 aside the agency action.") (emphases added).[3]

22

23 [3] *Pit River Tribe v. United States Forest Serv.*, 615 F.3d 1069 (9th Cir. 2010) ("*Pit River II*"), which
   this Court cites in its Order at 28, is consistent with the above framework and does not support a
24 remedy other than vacatur here.  *Pit River II* concerned the appropriate remedy where lease extensions
   were found to violate NEPA but the validity of the original leases was not in question.  Specifically, in
25 the preceding case, *Pit River Tribe v. United States Forest Serv.*, 469 F.3d 768, 788 (9th Cir. 2006)
   ("*Pit River I*"), the Ninth Circuit held that two BLM geothermal lease extensions, including a five-year
26 extension in 1998 and a forty-year extension in 2002, violated NEPA, and therefore had to be
   "undone," because BLM never prepared an EIS for the 1998 extension.  Thus, the question before the
27 court was whether to restore the *status quo ante* as it existed when BLM took its unlawful action – *i.e.*,
28 an active lease that had not yet expired – or whether to vacate the extensions and rule that, absent the

**B.      Remand Without Vacatur is Warranted Only in Limited Circumstances**

Notwithstanding the mandatory language of the APA, or Supreme Court recitations of this language, various courts, including the Ninth Circuit, have carved out narrow exceptions to the rule and allowed remand without vacatur.  But almost every court recognizing or applying this discretion has specifically acknowledged its limited applicability or explained, using varying language, that vacatur is the "presumptive," "standard," or "default" remedy under the APA.  *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) ("[o]rdinarily" invalidate an agency rule); *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 78 (D.D.C. 2010) (vacatur and remand are the "presumptively appropriate remedy for a violation of the APA"), *aff'd in part, rev'd in part on other grounds*, 661 F.3d 1147 (D.C. Cir. 2011); *Humane Soc'y of U.S. v. Johanns*, 520 F. Supp. 2d 8, 37 (D.D.C. 2007) ("standard"); *In re Polar Bear Endangered Species Act Listing 4(d) Rule Litig.*, 818 F. Supp. 2d 214, 238 (D.D.C. 2011) ("presumptive"); *Reed v. Salazar*, 744 F. Supp. 2d 98, 119 (D.D.C. 2010) ("default"); *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083-84 (D.C. Cir. 2001) ("normal[ ]").[4]

In the Ninth Circuit, remand without vacatur is extremely uncommon, and the court has allowed remand without vacatur only "*[i]n rare circumstances*, when [the court] deem[s] it advisable that the agency action remain in force . . . ." *Humane Soc'y of the United States v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010) (emphasis added).  As one district court explained, "the Ninth Circuit has only found remand without vacatur warranted by equity concerns in limited circumstances, namely [when] *serious irreparable environmental injury*" will occur if the decision is vacated.  *Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 951 (N.D. Cal. 2010) (emphasis added); *see also Idaho Farm Bureau*, 58

---

extensions, the original leases had expired under their own terms.  *Pit River II*, 615 F.3d at 1074.  The district court's decision, upheld by the Ninth Circuit, was to rule that the lease extensions were "void, as if they never happened," but to use its discretion to preserve the original leases so as to "approximate" the position of the lessee as it was "awaiting the agencies' decision, based on a valid EIS, as to whether to extend the leases." *Id.* at 1081.  Thus, the agency actions that had violated NEPA – meaning the issuance of the lease extensions – were vacated in accordance with the presumptive remedy under NEPA. The equitable power of the court operated to keep the prior leases, whose validity upon original issuance was not in question, in existence, despite the voiding of the extensions.

[4] *See also Bunyard v. Hodel*, 702 F. Supp. 820, 822 (D. Nev. 1988) (citing opinions from the Third, Fifth, and Eleventh Circuits for the proposition that "[w]here . . . agency misconduct occurs, the proper remedy is to vacate the agency decision at issue and remand the matter").

1    F.3d at 1405 (refusing to vacate invalid rule because vacatur would cause "potential extinction of an

2    animal species"); *see also W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980) (expressing

3    concern that vacating the decision might "thwart[ ] . . . the operation of the Clean Air Act" during

4    reconsideration).

5           The Ninth Circuit recently revisited this issue and reaffirmed that remand without vacatur is

6    only ordered in "limited circumstances." In *California Communities Against Toxics v. U.S. EPA*, the

7    agency requested a voluntary remand to fix a flawed rule, and the Court remanded the rule without

8    vacatur because:

9           The delay and trouble vacatur would cause are severe.  [The power project] is scheduled
            to come on line in November, but vacatur . . . could well delay a much needed power
10          plant. Without [it], the region might not have enough power next summer, resulting in
            blackouts.  Blackouts necessitate the use of diesel generators that pollute the air, the very
11          danger the Clean Air Act aims to prevent.

12   688 F.3d 989, 993-94 (9th Cir. 2012).  The Court emphasized that remand without vacatur would

13   "sav[e] the power supply" and prevent environmental air quality degradation from increased diesel

14   exhaust.  *Id.*  However, the Court specifically stated that this remedy did not authorize commencement

15   of operations at the power plant without a new and valid EPA rule in place.  *Id.* As explained below,

16   applying the test from *California Communities* requires vacating BLMs EA, FONSI, and the two

17   Monterey County leases.[5]

18   **C.    The Supreme Court in *Monsanto* Clarified that Vacatur is Preferred over an Injunction**

19          Much of the caselaw addressing remedies for violations of NEPA and/or the APA predates the

20   Supreme Court's recent decision in *Monsanto v. Geertson Seed Farms*, 130 S. Ct. 2743 (2010).  In

21   *Monsanto*, the Court specifically addressed the distinction between injunctive relief and vacatur, stating

22   that vacatur is the "less drastic remedy" and that the "additional" relief of an injunction should not be

23   granted if the remedy of vacatur would address a plaintiff's claims.  130 S.Ct. at 2761.  Before

24   *Monsanto*, courts would often grant or deny the plaintiff injunctive relief without considering or even

25   mentioning vacatur.  *See, e.g.*, *Lands Council v. Powell*, 395 F.3d 1019, 1037 (9th Cir. 2005); *Idaho*

26

27   [5] The Ninth Circuit's *per curiam* opinion in *California Communities* does not address the specific,
     mandatory language from Section 706(2) of the APA or the numerous cases stating that unlawful
28   agency decisions "shall" be set aside.

*Sporting Congress, Inc. v. Rittenhouse*, 305 F.3d 957, 975 (9th Cir. 2002); *High Sierra Hikers v. Blackwell*, 390 F.3d 630, 640 (9th Cir. 2004); *Neighbors of Cuddy Mountain v. USFS*, 137 F.3d 1372, 1382 (9th Cir. 1998). But this caselaw must now be read in light of the Supreme Court's recent clarification that vacatur is the preferred remedy for agency violations of the APA and NEPA.

Given *Monsanto*'s mandate to consider vacatur before ordering injunctive relief, post-*Monsanto* NEPA caselaw has largely shifted towards vacating rather than enjoining agency actions carried out with inadequate environmental review. *See, e.g.*, *Van Antwerp*, 719 F. Supp. 2d at 78-79 (after *Monsanto*, granting partial vacatur as the "presumptively appropriate remedy" but seeking additional briefing on plaintiff's request for injunction); *Ctr. for Food Safety*, 734 F. Supp. 2d at 952 (subsequent to *Monsanto* decision, denying plaintiff's request for injunction, but ordering vacatur); *Reed v. Salazar*, 744 F. Supp. 2d at 120 (citing *Monsanto* when vacating agency decision that violated NEPA); *In re Polar Bear Endangered Species Act Listing*, 818 F. Supp. 2d at 238 (vacating agency decision because agency did not prepare EA in violation of NEPA). Similarly, to provide Plaintiffs with a meaningful remedy that upholds the purposes of NEPA, this Court should order vacatur.

## IV.    THE COURT MUST VACATE THE EA, FONSI, AND ILLEGALLY-ISSUED LEASES

### A.    The Presumptive Remedy of Vacatur is Appropriate

Under the Ninth Circuit's case law, the court should presume vacatur is the appropriate remedy, but pursuant to *California Communities*, may consider both the "seriousness" of the agency's errors against the "disruptive consequences" of vacating the agency's decision. 5 U.S.C. § 706(2)(A); *Idaho Farm Bureau*, 58 F.3d at 1405; *Cal. Communities*, 688 F.3d at 992 (citing *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).

First, the Court must first consider "how serious the agency's errors are." *Id.*; 688 F.3d at 992. Here, BLM's decision is substantially and indeed fundamentally flawed. As this Court recognized in its March 31, 2013, Order, BLM failed to properly analyze the significant impacts of its lease sale. BLM's EA and FONSI almost entirely failed to evaluate the potential impacts of hydraulic fracturing – or "fracking" – even though "[t]he effect of fracking on the oil and gas economies has been tremendous," and that as a result of fracking, "[i]n some areas, the rate of drilling increased by more than an order of magnitude." Order at 3. This massive shift in the oil and gas industry has provided

1   "access to previously unattainable shale oil such as that in the four parcels of Monterey shale at issue,"

2   and "[c]ertainly there was significant increased interest in oil and gas drilling in the Monterey shale,"

3   which is what led to the 2011 sale.  *Id.* at 22-23.

4          The Court also acknowledged that fracking on the leases may endanger the environment,

5   noting, for example, that a Congressional investigation "identified 29 chemicals [used in fracking] that

6   are known or possible human carcinogens, regulated under the Safe Drinking Water Act as risks to

7   human health, or listed as hazardous air pollutants under the Clean Air Act."  *Id.* at 4.  The Order notes

8   the Monterey County leases parcels' "close proximity to [the] San Antonio Reservoir, an important

9   water resource for the Salinas Valley," and the fact that the leases are situated in the Salinas River

10  watershed, which recharges freshwater aquifers, "supply[ing] water for nearby communities and

11  agriculture."  *Id.* at 26.  Moreover, the Court states that "[t]here was clearly a controversy here

12  regarding the nature of the drilling to occur on the leases and the potential impacts drilling would

13  impose on the nearby communities," *id.* at 25, and that even though the exact nature of potential

14  impacts of fracking on the parcels may be unknown, it is this lack of data that makes a proper

15  investigation of impacts "crucial," *id.* at 27-28.

16         Thus, with respect to the Monterey County leases, the Court held that BLM unlawfully

17  concluded that the leases would have no significant environmental impact because the agency failed to

18  consider the impacts of fracking.  This "unreasonably distorted BLM's assessment of at least three of

19  the [NEPA] 'intensity' factors," *id*. at 24, the presence of any one of which "may be sufficient to

20  require an EIS," *id.* at 20.  In particular, this Court ruled that "BLM erroneously held that the leases

21  were not highly controversial," that "BLM erroneously analyzed the potential effect of the leases on

22  public health and safety," and that "BLM erroneously discounted the uncertainty from fracking that

23  may be resolved by further data collection."  *Id.* at 24-28.

24         By failing to fully address or even properly consider the very real risks of fracking, the agency's

25  errors constitute a "serious" violation of NEPA.  *Cal. Communities*, 688 F.3d at 992, 994.  The purpose

26  of NEPA is to ensure the agency has fully evaluated and weighed the risks and benefits of an action

27  *before* the action is taken.  *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989)

28  (NEPA ensures that "important effects will not be overlooked or underestimated only to be discovered

after resources have been committed or the die otherwise cast"); Order at 27-28 (NEPA requires the agency to take a "hard look" and inform the public "that it indeed has taken environmental considerations into account before taking action").  Allowing the leases to continue without vacatur would entirely undermine this statutory scheme.

Second, while BLM's legal errors are serious, vacatur of BLM's actions would have no "disruptive consequences" of the type other courts have found to warrant a court to withhold vacatur. *Cal. Communities*, 688 F.3d at 993-94.  Unlike *Idaho Farm Bureau*, where vacatur of an agency's protective rule would put an endangered species at greater risk of extinction, setting aside BLM's lease sale decision, the NEPA documents, and the two unlawfully issued leases would simply require refund of the payments for the Monterey County leases themselves (totaling less than $60,000, AR 05542, 08089).  58 F.3d at 1392.  Unlike *Western Oil & Gas*, vacatur would not thwart the operation of a statute but would ensure, as NEPA requires, that resources are not committed before BLM has evaluated impacts. *W. Oil & Gas Ass'n*, 633 F.2d at 813 ("We are reluctant to [invalidate agency's rule] under the circumstances of this case. Our hesitancy springs from a desire to avoid thwarting in an unnecessary way the operation of the Clean Air Act . . . ").

Nor does the present case come remotely close to the situation in *California Communities* where construction was close to completion, the project was a "billion-dollar venture" already endorsed by state agencies and the California Legislature, and failure to get the power plant on line would lead to blackouts, which themselves "necessitate the use of diesel generators that pollute the air, the very danger the Clean Air Act aims to prevent."  688 F.3d at 994.  Here, neither the state's power supply nor a billion-dollar project are at risk.  Instead, no construction or other commitments of resources by the lessees have apparently been initiated as yet, and hence there is little to be disrupted by vacatur of the leases.

Importantly, because BLM has consistently acknowledged the possibility of lease cancellation here, cancellation should not cause undue disruption. BLM issued the leases under the condition that "[l]eases shall be subject to cancellation if improperly issued."  43 C.F.R. § 3108.3(d).  BLM's Notice of Competitive Lease Sale acknowledged that administrative appeals could result "in lease cancellation," in which case BLM "will authorize refund of the bonus bid, rentals, and administrative

fee" if certain conditions are met.  AR 05609.  Any potential lessees were well aware at the time of the lease sale that the leases were the subject of significant controversy.  BLM's decision record indicated that the agency had received over 1,650 comments on the lease sale from individuals concerned about the action's environmental impacts. AR 00957. Similarly, BLM's September 13, 2011, Information Notice notified potential lessees that the lease sale had been protested, a necessary precursor to litigation.  AR 08087. A prudent lessee would necessarily be prepared for the very real possibility that the leases would be challenged and ultimately declared unlawful.  Vacatur should therefore cause minimal disruption, if any, and this disruption cannot override the presumption that such leases should be vacated.[6]

**B.      Vacatur Ensures the Agency Will Take a Fresh Look and Not Simply Defend a Pre-Ordained Conclusion**

In addition to the on-the-ground harm that leaving the BLM decisions in place would likely entail, failing to vacate the leases fosters "the danger that an agency, having reached a particular result, may become so committed to that result as to resist engaging in any genuine reconsideration of the issues."  *Food Mktg. Inst. v. ICC*, 587 F.2d 1285, 1290 (D.C. Cir. 1978).  The Ninth Circuit framed this issue similarly in vacating a faulty NEPA document in *Metcalf v. Daley*:

> [T]he comprehensive "hard look" mandated by Congress and required by the statute must be timely, and it must be taken objectively and in good faith, not as an exercise in form over substance, and not as a subterfuge designed to rationalize a decision already made.

214 F.3d 1135, 1142 (9th Cir. 2000).  The court questioned whether, absent vacatur, the new NEPA document would "be a classic Wonderland case of first-the-verdict, then-the-trial?"  *Id*. at 1146.

---

[6] Similarly, BLM can and does vacate leases on its own authority when it determines that a lease was issued in error.  *Boesche v. Udall*, 373 U.S. 472, 478-81 (1963) (indicating that the Secretary of the Interior's power to cancel leases issued as a result of administrative error is "firmly established").  BLM has used this authority to set aside leases when its own Interior Board of Land Appeals ("IBLA") determined those leases were issued in violation of NEPA.  For instance, in *Board of Commissioners of Pitkin County and Wilderness Workshop*, the IBLA determined that BLM violated NEPA in issuing oil and gas leases on three national forest parcels. 173 IBLA 173, 181 (2007). Similarly, in *Center for Native Ecosystems*, the IBLA set aside BLM's issuance of fifteen parcels in an oil and gas lease sale because of inadequate NEPA. 170 IBLA 331, 351 (2006).  If BLM can on occasion cancel leases upon recognizing its violations of NEPA, there is no reason the same result should not occur when a court finds the agency similarly acted unlawfully.

1    The agency's "failure to respect the process mandated by law cannot be corrected with post-hoc

2    assessments of a done deal." *Houston*, 146 F.3d at 1129; *see also Independence Mining Co. v. Babbitt*,

3    105 F.3d 502, 511 (9th Cir. 1997) ("The rule barring consideration of post hoc agency rationalizations

4    operates where an agency has provided a particular justification for a determination at the time the

5    determination is made, but provides a different justification for that same determination when it is later

6    reviewed by another body.").   This is particularly true for cases involving contracts. As the Ninth

7    Circuit noted in *Houston*:

> Where contracts have already been entered into, the opportunity to "choose" has been
> eliminated - all that remains is the limited ability to make the path chosen as palatable as
> possible. Therefore, an injunction would not serve any purpose if the contracts are not
> invalidated. We conclude that the district court's decision to rescind the contracts was not
> an abuse of discretion.

11   146 F.3d at 1129.

12   Vacating the EA, FONSI, and Monterey leases dramatically increases the odds that the remand

13   will actually serve to inform a more reasoned decision rather than simply be an exercise "designed to

14   rationalize a decision already made." *Metcalf*, 214 F.3d at 1142.

## V.    ABSENT VACATUR, AN INJUNCTION IS WARRANTED

16   As demonstrated above, Plaintiffs believe vacatur is the appropriate remedy for BLM's

17   violations of NEPA and the APA. *Monsanto*, 130 S. Ct. at 2761.   However, if this Court believes that

18   vacatur is inappropriate, it must use its equitable discretion to issue a permanent injunction enjoining all

19   oil and gas activities on the unlawfully issued leases until BLM complies with NEPA.

20   As an initial matter, as the Supreme Court has clarified, a district court has some discretion as to

21   which remedy to apply (constrained of course by caselaw and statutory language), but a court still must

22   provide a remedy sufficient to address the violation at issue.   In *United States v. Oakland Cannabis*

23   *Buyers' Coop.*, the Court held:

> [A district court's] choice . . . is simply whether a particular means of enforcing the
> statute should be chosen over another permissible means; their choice is not whether
> enforcement is preferable to no enforcement at all. Consequently, when a court of equity
> exercises its discretion, it may not consider the advantages and disadvantages of
> nonenforcement of the statute, but only the advantages and disadvantages of employing
> the extraordinary remedy of injunction over the other available methods of enforcement.

28   532 U.S. 483, 497-98 (2001) (internal citations omitted).   Because some remedy must issue as a result

of the agency's NEPA violation, if this Court declines vacatur, the Court must enjoin oil and gas activities until the violation has been corrected.

A court should grant a permanent injunction if a plaintiff can demonstrate:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Monsanto*, 130 S. Ct. at 2756 (internal quotation marks omitted).  Plaintiffs meet all of these criteria.

**A.     Plaintiffs Have Suffered an Irreparable Injury.**

If oil and gas leasing activity is allowed to proceed in spite of the agency's NEPA violation, Plaintiffs are likely to suffer both irreparable substantive injury from environmental harms, as well as procedural injuries.

The Supreme Court has explained that "[e]nvironmental injury, by its nature . . . is often permanent or at least of long duration, *i.e.*, irreparable." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987). More recently, in a decision specific to injunctions under NEPA, the Supreme Court noted that harm is most likely to occur when "a new type of activity with completely unknown effects on the environment" is at issue.  *Winter v. NRDC*, 555 U.S. 7, 23 (2008).  The Court also acknowledged that, "[p]art of the harm NEPA attempts to prevent in requiring an EIS is that, without one, there may be little if any information about prospective environmental harms and potential mitigating measures." *Id.*  Such is the case here.  As this Court highlighted in its March 31, 2013, opinion, even BLM agrees that the "the effects of fracking on the parcels at issue are largely unknown," and that "this is precisely why proper investigation was so crucial in this case."  Order at 27-28.

Further, information available in the record here demonstrates that allowing activities to proceed on the unlawfully issued leases pending the completion of a new NEPA analysis is likely to injure Plaintiffs and that the injury would be irreparable.  As established in their merits briefing, Plaintiffs have members who live near or regularly visit the areas affected by the leasing at issue.  *See* Pl. Opening Summ. J. Br. at 19 n. 4 and declarations cited therein, Dkt. # 28.  Specifically, Plaintiffs' members will be harmed by air and water quality impacts stemming from lease development, as well as impacts to the habitat of the species utilizing the areas.  Craig Decl. ¶¶ 1, 4-5, 10, Dkt. # 28.2; Shimek

Decl. ¶ 1, 5-7, 10, Dkt. # 28.4; Anderson Decl. ¶¶ 3, 5, 11-20, Dkt. # 28.1; *see also* Order at 26 (noting that fracking on the leases could cause great damage to the waters of the Salinas Valley, causing harm to nearby communities and agriculture). These harms are sufficient to establish irreparable injury for injunction purposes. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (plaintiffs established irreparable injury by demonstrating the challenged project "will harm its members' ability to 'view, experience, and utilize' the areas in their undisturbed state").

Absent an injunction (or vacatur of the leases), such injuries could not be prevented as the "sale of a non-NSO oil or gas lease . . . constitutes the 'point of commitment' [beyond which] the government no longer has the absolute ability to prohibit potentially significant impact on the surface environment." Order at 18. Any such impacts would harm Plaintiffs and their members.

In addition to the harms to their aesthetic, recreational and health interests that fracking on the leases would inflict upon Plaintiffs and their members, the flawed NEPA process and the illegally-issued leases cause procedural injuries. *See*, *e.g.*, *Save Strawberry Canyon v. DOE*, 613 F. Supp. 2d 1177, 1189 (N.D. Cal. 2009) ("There is no doubt that the failure to undertake an EIS when required to do so constitutes procedural injury to those affected by the environmental impacts of a project."); *Sierra Club v. Bosworth*, 510 F.3d 1016, 1033 (9th Cir. 2007) ("[i]n the NEPA context, irreparable injury flows from the failure to evaluate the environmental impact of a major federal action"). BLM's NEPA violations will have deprived Plaintiffs of the opportunity to participate in the NEPA process "at a time when such participation is required and is calculated to matter." *Strawberry Canyon*, 613 F. Supp. 2d at 1189.

In sum, allowing land-disturbing activities on the leases to continue absent compliance with NEPA would cause injury to Plaintiffs, and such injury is sufficiently irreparable to support an injunction. *Cottrell*, 632 F.3d at 1135 ("[A]ctual and irreparable injury, such as [plaintiff] articulates here, satisfies the 'likelihood of irreparable injury' requirement articulated in *Winter*.")

**B.      The Remedies Available at Law are Inadequate.**

Remedies available at law, such as monetary damages, are inadequate to remedy Plaintiffs' injuries. As both the Supreme Court and the Ninth Circuit have long held, "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages." *Sierra Club v. Bosworth*, 510 F.3d

at 1033; *Amoco Prod. Co.*, 480 U.S. at 545.  Plaintiffs' environmental injuries here, including water

contamination, air pollution, and the destruction of habitat of threatened or endangered species, require

equitable relief.

**C.     The Balance of Hardships Favors an Injunction.**

When balancing hardships in a case where environmental harm is likely, "the balance of harms

will usually favor the issuance of an injunction to protect the environment."  *Amoco Prod. Co.*, 480

U.S. at 545.  Here, Plaintiffs have a strong interest in preventing likely harms to precious natural

resources, such as the Salinas Valley's water, air, and endangered species. *See* Pl. Opening Summ. J.

Br. at 19 n. 4 and declarations cited therein.  Dkt. # 28.

In contrast, BLM will not suffer any cognizable harm if this Court enjoins activities under the

unlawfully issued leases.  Plaintiffs do not seek to exclude BLM personnel or their agents from

otherwise legal and legitimate activities or prevent the public from using the lands for purposes

unrelated to oil and gas leasing.  With regard to the lessees, enjoining oil and gas activities at the lease

sites would present minimal hardship.  As far as Plaintiffs are aware, the lessees have not sought an

Application for Permit to Drill or otherwise invested significant resources into the leases.  *See* 43

C.F.R. § 3162.3-1 (requiring APD prior to commencement of "drilling operations").  Other on-the-

ground activities may nonetheless be occurring at the site, but the agency does not provide public

notice of such activities.  Any resulting economic impact to the lessees – who were well-aware when

bidding on these controversial leases that a protest had been lodged and that full cancellation of their

lease was a possibility – would pale in comparison to environmental harms, such as the contamination

of the Salinas Valley's aquifer with fracking chemicals.  *See* 43 C.F.R. § 3108.3(d) ("Leases shall be

subject to cancellation if improperly issued").

**D.     The Public Interest Will Not Be Disserved by an Injunction.**

It is well-established that the public has a considerable interest in preventing irreparable harm to

the environment. *Lands Council v. McNair*, 537 F.3d 981, 1005 (9th Cir. 2008) (en banc), *overruled on*

*other grounds by Winter*, 555 U.S. 7 ("[P]reserving environmental resources is certainly in the public's

interest.").  The public clearly has a strong interest in preventing the contamination of the Salinas

Valley's groundwater, which is relied on by communities and agriculture, in preventing the degradation

1    of air quality, and in protecting threatened and endangered species from oil and gas activities.

2          Finally, the public interest usually is served by enjoining federal action undertaken without

3    "careful consideration" of environmental impacts. *Cottrell*, 632 F.3d at 1138; *see also Bosworth*, 510

4    F.3d 1016, 1033 (9th Cir. 2007) ("the public interest favor[s] issuance of an injunction because

5    allowing a potentially environmentally damaging program to proceed without an adequate record of

6    decision runs contrary to the mandate of NEPA").

7          Therefore, if the Court declines to vacate the leases, Plaintiffs also meet all required factors for

8    an injunction, and the Court should use its equitable powers to enjoin all oil and gas activities under the

9    unlawfully-issued Monterey leases until such time as BLM complies with the Court's orders on

10   remand.

11   **VI.      CONCLUSION**

12         For the reasons stated above, Plaintiffs request that this Court vacate the EA, FONSI, and the

13   two Monterey County leases and remand all aspects of the lease sale decision to BLM.  Alternatively,

14   in the event the Court declines to vacate BLM's unlawful actions, Plaintiffs request an injunction

15   preventing any surface-disturbing activity on the Monterey leases until and unless BLM has remedied

16   its NEPA violations.

17

18   Dated: June 3, 2013                      Respectfully submitted,

19                                            /s/David R. Hobstetter
20                                            David R. Hobstetter (CA Bar No. 277344)
                                              CENTER FOR BIOLOGICAL DIVERSITY
21                                            351 California Street, Suite 600
                                              San Francisco, CA 94104
22                                            Phone: (415) 436-9682 x321
                                              Facsimile: (415) 436-9683
23                                            Email: dhobstetter@biologicaldiversity.org

24                                            Brendan Cummings (CA Bar No. 193952)
                                              CENTER FOR BIOLOGICAL DIVERSITY
25                                            P.O. Box 549
                                              Joshua Tree, CA 92252
26                                            Phone: (760) 366-2232
                                              Facsimile: (760) 366-2669
27                                            Email: bcummings@biologicaldiversity.org

28                                            Nathan Matthews (CA Bar No. 264248)
                                              SIERRA CLUB

1   85 2nd St., Second Floor
San Francisco, CA 94105
2   Phone: (415) 977-5695
Facsimile: (415) 977-5793
3   Email: Nathan.Matthews@sierraclub.org

4   Attorneys for Plaintiffs
CENTER FOR BIOLOGICAL DIVERSITY and SIERRA
5   CLUB

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Opening Brief Re Remedy                          Case No. CV-11-06174-PSG